point taken. Okay, the next argued case is number 17-1599, Research Frontiers Incorporated against E-Ink Corporation. Mr. Pazuniak, how do you pronounce your name? Good morning, your honors. May it please the court, George Pazuniak for RFI. We are here because the district court below violated multiple court claim construction principles in unreasonably and artificially restricting the claims to a single embodiment in the patent. In the blue brief, in 46, RFI cites from the 185 patent from the field invention, but omits a portion of the sentence by ellipsis, which is in column 1, line 19. The patent similarly stated that, quote, the present invention relates in general to particles capable of reflecting heat, especially near infrared radiation, dot, dot, dot, and more specifically to antisymmetrically shaped particles of mixed metal oxides, close quotes, such as bismuth manganese oxide pigments useful for such applications. By omitting a portion of that sentence, RFI appears to me to be suggesting the invention is really about the particles rather than their use in SPDs in particular. Do you agree with me? Your honor, as we pointed out in the reply brief when this issue was raised, we were taking things in pieces, and we specifically addressed the remainder part of that sentence in another part of the brief. Because there were different issues that were raised, different arguments that were made, and so they were taken in proper order. So at this point, we're addressing- Well, do you agree with me that if you put in the phrase, for use in SPD light valves and in SPD light valve suspensions and films, back into that language, that the full sentence in the field of invention actually supports the district court's claim construction? No, I disagree, your honor. And I disagree with that for a couple reasons. One, there are three times in the body of the specification where the present invention is defined. The first and most relevant part of the definition of the present invention is under the summary of the invention in column three, beginning at lines 51 through 67, where the present invention relates to particles without any suggestion of being limited to an SPD. In the other two instances where the present invention is made, including the sentence that your honor has pointed to, it states, in fact, that the present invention relates in general to particles capable of reflecting heat. And then, in this instance, it states an intended use, an intended use which is an SPD. So no, I disagree, because the only time SPDs are mentioned are as one example, an intended use of the invention. Otherwise, the definitions of the patent and their components are either specifically directed to SPDs and EPDs, or are generically broad enough to encompass both. EPDs are not mentioned in your past specification. Not specifically. Not at all. Right? Well, E- I don't see anything that says EPD in here. I just want to make sure that we're being clear. Yes, that is correct, your honor, not in hack verba, but if you- It's your position that by broad, some of the broad words could encompass EPDs. Well, the, when we talk about electro-optical devices, this is a term of art. We know that it's a term of art because E-ink, which I cite not because it's the defendant, but because it is a major factor in the electro-optical field, has published patents before this patent was published that said electro-optical devices include EPDs, or otherwise stating EPDs are electro-optical devices. Can I ask you for a question for a minute about Claim 2? Yes. I believe uses the language light valve suspension. That's one of the terms that is in dispute on appeal, right? How I look at the disclosure of Column 1, Lines 26 through 32, and how is that not an express definition of light valve suspension as requiring Brownian movement? I mean, it says the liquid suspension, sometimes referred to as, and there are several different words, and one of them is light valve suspension, comprises small particles suspended in a liquid suspending medium. In the absence of an applied electrical field, the particles in the liquid suspension assume random positions due to Brownian movement. How is that not a lexicographer-type express definition in the specification? Well, again, if you take a look at the first sentence, the first sentence states a liquid suspension, sometimes called the plate wave suspension, etc., comprises small particles suspended in a liquid suspending medium. That's the first sentence. If you stop there, at this point, this is a generic statement that applies to both EPDs and SBDs. Now, the second sentence goes on to describe a particular implementation or species within that genus, which is an SBD, and then states that light valves of the type described herein are known as SBDs. So, again, the... Of the types described herein refers to the entirety of the paragraph above that. It does not refer to the entire patent, but only to that particular paragraph. Again, we are in the section called background of the invention. If one goes to the summary of the invention, then we're no longer referring to SBDs. We're referring to electro-optical devices. What about your field of the invention? I'm sorry? What about the field of the invention, which is the first... It's on column one, the first part, and there, in the field of the invention, you say that the present invention is for use in SBD light valves. Right. And that is an intended use. There's no doubt that the inventor and his company were in the SBD business. That's what they... That's where the invention was developed. That's where they intended to use it. The inventor and everyone else, apparently, in the field also recognized that electro-optic devices include both SBDs and EPDs. Both E-Ink and the PTAB have determined that, in fact, these claims can cover EPDs. In fact, as far as we can tell, the same particles can be used in EPDs and SBDs. And therefore, after setting out the background of how this invention developed and making sure that it was clear that, yes, this can be used in SBDs, the inventor said the scope of the invention is electro-optical devices comprising these particular particles. There's no way out, really, of understanding or a person's skill in the art not understanding that the intended scope were SBDs and EPDs, which were the two basic subspecies of the generic electro-optical devices. Did the district court not construe the term light valve in RFI's favor? Yes. The court construed the light valve as... No, no, no. All you have to do is say yes. So E-Ink asserts that the argument of claim differentiation is irrelevant because it's based on a term in Claim 7 via 2 and 3, i.e. light valve, and that it was construed in your favor. I apologize, Your Honor. Let me find the red brief. Let me direct you to page 51 of the red brief. About halfway down, first is a threshold matter. RFI's new argument is irrelevant. I'm sorry. I must have the wrong... I thought you said, Your Honor... The red brief. Oh, the red brief. I apologize. About halfway down, page 51. They say the district court adopted RFI's proposed broad construction. Thus, RFI already prevailed as the light valve. But that term, and hence RFI's claim differentiation argument, is irrelevant because the judgment of no infringement was based on other terms, not light valve. Yes. And Your Honor's question is... Are they correct? Well, on the claim differentiation argument, you pointed out that there were... You know, that's only one issue. Okay. So can we ignore that one? No, it's not to be ignored, but the... If I may, Your Honor, go back to this. Yes, Your Honor. Really, the claim differentiation is not a primary... So we can't ignore it? Yes, we can't ignore it. But I will say that if you took the entirety of the claim, you will see that the... Well, I don't want to get into that because it would take too long to explain. Okay, thank you. Okay, let's hear from the other side, and if there's whatever else you need to tell us, there'll be time in rebuttal. Okay, Your Honor, thank you. I think it's important to start with the scope of the claim, which is directed to an electro-optical device. Everything after that, an electro-optical device, clearly in the record includes SBDs and EPDs. After that, everything in the claim is generic that encompasses both SBDs and EPDs. The only way you can limit the claims to an EPD is by extracting or importing a particular embodiment. In this case, ignoring the generality of the description of the invention, which is an electro-optical device, and focusing on a specific species or implementation. That is not construction in accordance with the specification. That is importing a limitation. That's what I wanted to say. Thank you. Mr. Rader. Thank you, Your Honors, and may it please the Court. The 185 patent is notable both for what it consistently conveys throughout about SBDs and also—  If we agree with you that light valve suspension is a subset of light modulating unit comprising a suspension of that term, do we need to go into a second de novo construction, or can we consolidate our analysis for just the first claim term? I think you can essentially consolidate your analysis. And the reason I say that, Your Honor, is that essentially this is a nested technology. So we have a diagram on page 9 of our red brief that shows this. You have in the primary embodiment these droplets of light valve suspension. That's the light valve suspension. They're embedded in that embodiment within a film, and that film is the light modulating unit comprising the suspension. And then that film is sandwiched between two walls with electrodes, and collectively that device is called a light valve. So the light modulating—excuse me. The part that's actually doing the work, of course, is the droplets of the suspension with the particles that align and engage in Brownian movement. So the light modulating unit comprising the suspension is simply the film that holds those droplets in place. And for that reason, the claim construction exercise is fairly similar between the two. The light valve—yes, Your Honor. I was going to ask you, I noticed that, for example, in the magistrate judge's opinion, the word light modulating valve, I think it's light—or maybe it's light modulating unit, in one of the related patents was defined differently than how light modulating unit was defined in the patent that we're looking at on appeal.  I mean, I realize there's different specifications in the two different patents, but it's just a little bit odd that you have one interpretation that's broad and one interpretation that's reading in the Brownian movement. I think what Your Honor might be referring to is the construction that the judge gave both in the 491 patent and actually in this patent to the term light valve by itself, as opposed to either light valve suspension or light modulating unit comprising a suspension. And I can explain that. I guess I'm looking at page A19. And on page A19, the court has the construction of a term light modulating unit and says that it's a unit which controls light transmission using a suspension of particles. And so what I'm asking about is why is that interpretation— how do you square that interpretation of that term with the interpretation that was arrived at in this patent? I understand, Your Honor. So in the context of the 491 patent, the district court separated out the light modulating unit from the light valve suspension—from the suspension piece of it. Now, I'm not sure that necessarily made a lot of sense, but the judge nevertheless came to the same conclusion when considering the proper construction of the term that included the suspension. So in other words, it's the addition of the word suspension in the claim-wanted issue that is causing the district court to say this should be interpreted the same as liquid suspension. I think that's right. Because of the definition in Column 1 of the patent that Your Honor was asking about, it explains exactly what the light valve suspension is and how it works. Now, in this patent, when you have the light modulating unit comprising the suspension, again, these are nested terms. So a question arises as to what it means to modulate the light, and that term, which is also used predominantly in Column 1, refers to controlling the transmission of the light. But I think the reason that the district judge came to slightly different conclusions on the 491 patent, which has since been dropped, is because he separated out the light modulating unit from the suspension. And is the patent specification different in that other patent? The patent specification is, in most respects, very similar. In the 491 patent, it's a much more extensive specification because that patent contains extensive teachings about how you make the film, and there are numerous working examples that describe, as Magistrate Judge Burke set out in his opinion, how in every working example the film or the light modulating unit controls the light transmission and how the particles of the suspension randomize and orient to either block the light or allow the light through. Are the express definitions that are found in Column 1 of the patent on appeal found in the 491 patent as well? Very similar. The discussion of the light valve suspension is very similar in the 491, which is why the judge came to that same conclusion, and that patent has since been dropped. But there's always a suspension. Isn't that correct? There's always a suspension. That's correct. So as you look through the patent, and you see that the suspension, as I said before, is part of the light modulating unit, which is part of the light valve, which is the SPD. And you see from start to finish that the patent describes the invention as an SPD with these particular particles. The title is SPD films and light valves with those particles. The field of the invention is SPD light valves that use those particles. The detailed description starts with the first sentence saying that the invention is the discovery that you can use these particles in an SPD. When an inventor in the specification uses a specific term and quotes it and then says what it means, I can understand that that would be an express definition. But where is the word, quote, light modulating unit defined to require Brownian movement? So, again, it's a light modulating unit comprising a suspension. But you agree, like, there's nothing in the specification that says a light modulating unit comprising a suspension should be understood to mean da-da-da. Right? There's nothing like that. There's no express definition of light modulating unit. Where light modulating comes up twice in column one, first at about line 23, it says the cell contains a light modulating element, which is a synonym for unit, which may be either a liquid suspension or a plastic film. So those are the two basic embodiments of the light valve or the SPD. Either it's like two pieces of glass with liquid filling between them or you have a film with these droplets. And both of those, it goes on in the very next sentence to describe that the liquid suspension, whether it's a uniform suspension between the plates of glass or the film with the droplets, it operates in exactly the same way. So I agree with Your Honor, Judge Stoll, that it's not an express definition of light modulating unit, but the description in column one of a light modulating unit, which always comprises a suspension, as Judge Newman observed, it always works in exactly this way. Let me ask you a little housekeeping question. And that is, I talked to your friend about the ellipsis that was used. You pointed out another in the red brief, and that was in quoting from the district court, the appellant dropped, as noted above. And that one I wasn't as sure was directly misleading. And I want to know why you think it was. Well, the issue I have there is, so now we're in column two, almost right across from the place in column one, and it says the term liquid light valve suspension means, as noted above. And then it has this very generic statement that basically just says any kind of suspension. And the point is that that's the... It changes the meaning. It changes the meaning. That's the sentence that RFI would like to focus the court on. And my point is that when it says, as noted above, it's referring to actually across in column one, where there, as Judge Stoll pointed out, there's a very... So it is substantial. I think it's very substantial because... So RFI's position is, I think the phrase that they used in the brief was that there's a hard stop at the period. After that first sentence that says the liquid suspension is just particles in a liquid, period. And then the very next sentence, using the definite article, the, goes on to describe what the particles do. The particles are in Brownian motion to block light. The particles become aligned so the light can go through. I would point you, for example, to the Verizon case. In the Verizon case that we cited in the brief, there was a statement of the present invention that described the gateway. And four sentences down, using the definite article, it said, the gateway does compression and decompression. And the court concluded, based on that, that the articulation of the present invention included the functionality that, in that case, it was four sentences down, not the very next sentence, right, explained exactly how the present invention worked. Here we have a seeming definition. Now, suppose it was a comma rather than a period, okay? The point is that it immediately follows explaining what these particles do. Otherwise, it doesn't tell you anything about what a light valve suspension is. That suspension would describe every suspension I'd ever created. Okay, thank you. So, Your Honors, I would very briefly like to address, we've talked a bit about the present invention, just the consistency of the disclosure as well, which is another one of the canons that we think is highly relevant. If you look at this patent, it's basically, as we pointed out in our brief, like the pattern of other RFI patents, saying, hey, we have our standard SPD, throw a different particle in it, okay? So, in terms of what embodiments they disclose, well, they disclose in Column 1, as well as at the top of Column 4, two basic embodiments, what they call the purely liquid embodiment, that's the phrase that's used at the top of Column 4, and then the film. Both of those, as explained in Column 1, function in exactly the same way with Brownian movement and particle alignment. Can I ask you, from the standpoint of claim differentiation, one could make the argument that because Claim 1 says, I mean, because Claim 2 then says the electro-optical device is a light valve and the suspension is a light valve suspension, that it's there that you're breeding in that express definition from the patent specification about Brownian movement. Until you get, when you walk through Claim 1, it doesn't have those words that were expressly defined in Column 1, and it's not until you get to Claim 2 that you see the words that were defined. Well, Claim 1 uses the phrase light modulating unit comprising a suspension. And in Column 1, it says all these terms are synonymous, liquid suspension, liquid light valve suspension, and light valve suspension. Now it's true, Claim 1 uses the word suspension rather than liquid suspension, but there's no distinction there, nor has one ever been argued. So when it talks about a suspension in Claim 1, that's exactly what it's talking about. So what does Claim 2 add to Claim 1? So the district court grappled with this, because at that time, RFI was making a claim differentiation argument based on Claim 2. They've dropped that argument, but the district court did discuss this. Claims 2 and 3 very closely parallel the disclosure at the top of Column 4 as well as in Column 1 about these two embodiments, what they call the purely liquid embodiment, which we call the pool, versus the film with the embedded droplets of light valve suspension. And Claims 2 and 3, although perhaps not drafted as clearly as they could have been, because it didn't use the word purely liquid, are clearly parallel to those two embodiments and directed at encompassing them. So in Claim 3 is the film, the polymeric film, and Claim 2 is just the suspension, meaning the purely liquid suspension. Did your client argue below that if Claim 1 were interpreted broadly, there would be a failure of written description? I don't recall making a written description argument as part of the claim construction process. I was just curious. Yeah, I don't recall doing that. I mean, it sounds as if, I mean, the trouble I'm having is that ordinarily, you know, there's difficulty in determining when there's an express definition in a specification versus when somebody's reading in something from the specification. Ordinarily, when somebody chooses to use broader claim terms in the claim than the one that's expressly defined, one might think that we shouldn't be reading in that special definition from the specification where there's a broader word choice in the claim. So do you have a response to that? Sure. So here, I mean, first of all, they're very focused on this electro-optical device, which is in the preamble of the claim. That's not the term that's in dispute. I understand. I'm just, I'm talking about, you want me to say that light modulating unit comprising a suspension should be, even though that's not the exact word used in Claim 1, it should be understood to be limited to the express definition in Claim, I mean, in Column 1. Sorry for saying Claim 1. I hope you're following me. Yes. Okay. So I think there, it's a combination of at least three canons of claim construction. It's not just one. So one is that the suspension is clearly defined in Claim 1, as both Judge Burke and Judge Stark found. Two is that, as I was starting to say before, the description of this invention is consistent throughout. Every embodiment, if you want to call them that, or every aspect of the description, both in this patent and in all of the incorporated by reference patents, involve exactly the same functionality, that you have particles that go into Brownian movement and align to either block or allow the light through. And three, there's a consistent use of the phrase, the present invention. There are three examples of that, one in the field of the invention, one in the detailed description of the invention, and one in the middle of Column 2, when it says the liquid light valve suspensions useful in the present invention may include, and then it lists two RFI patents that are incorporated by reference, both of which, of course, because this is the only technology they're dealing with, function in exactly that way. So there's a uniformity of disclosure, a uniformity of description of the present invention, and on top of that, a definition of what the suspension or light valve suspension, depending on whether you're looking at Claim 1 or Claim 2, means in Column 1. You're saying there's not much difference between liquid suspension and suspension. In the context of this patent and these claims, they mean the same thing, and Column 1 tells you that. It says the liquid suspension, parentheses, sometimes referred to as a liquid light valve suspension or simply a light valve suspension. It's using the term, it actually defines it so that you know when you see the word suspension, it's not iced tea. We're talking about a light valve suspension. Wherever you see the word suspension, the patent tells you that right in Column 1, line 26. Any more questions? Any more questions for this? Thank you, Mr. Rader. Thank you, Your Honor. Thank you. There was an initial question about the 491 patent, and counsel suggested that the description of that patent is very similar, which justified the district court in relying on the specifications and prosecution history of the 491 patent in concern of the 185. In fact, the 491 patent is essentially irrelevant, except to the extent it was cited in the patent. The 491 patent is by an entirely different inventor, so we have total different entities. The 491 patent was filed at a different time than the 185, and most importantly, the 491 patent specifically limited the invention to an SPD. The 491 patent doesn't refer to electro-optical devices, which is the subject matter of the 185 patent. If you have... And the 491 was, in fact, specific to an SPD device. So there's no justification whatsoever for relying on the language of the specification or prosecution history of the 491 in construing the 185. To be sure, there is some muddied language in the specifications in terms of references to the present invention and to the liquid suspensions. Mr. Pasnick, don't you want to deal with a serious argument by your opposing counsel that, once again, an ellipsis that you used was misleading to this Court? No, I don't believe that we ellipsed anything. We broke down the argument... Well, you did ellipse something. You deleted the words, as noted above. And what opposing counsel is saying, that by doing that, you're taking a general description which follows and making it look like that's the description when it's not? And you need to address that, I should think, for your own credibility. Your Honor, each and every argument regarding SPDs was addressed in the briefs. There was one time, yes, where we said, for use in the SPDs, where we separated out into a different argument. But we addressed every single word of every one of those languages. But we were focusing first on one argument, and then we addressed the SPD issue in another, very shortly after that in the brief. We didn't ignore it. We didn't withhold anything from the Court. Rather, our position is and remains that the present invention is, in general, directed to particles capable of reflecting heat, et cetera. The words for use in the SPD light valves and SPD light valve suspensions, that is admittedly a stated use for the invention. But the invention is an electro-optical device comprising the defined particles. And all the descriptions in the claims, all the descriptions in the summary of the invention, and in fact for most of this patent, are generic to both SPDs and EPDs. So we certainly did not attempt to withhold or mislead. I thought we just honestly addressed every single issue. But coming back, I think there is, yes, some muddy language in terms of the SPDs. But again, if you have a generic description, and in fact, for example, we discussed the light modulating unit comprising the suspension. In the IPR proceeding instituted by INC, the PTAB looked at that language, which cited SPD valves, and said, yes, but that language, light modulating unit, specifically includes EPDs. So experts in the art, people who have ordinary skill in the art, reading through the muddy language, still understood that even though the light modulating unit or light modulating element were cited for use in SPDs, the PTAB still said it includes EPDs. Now, Your Honor had raised the issue of Claim 2 and the fact that Claim 2 contains the language that's different and more specific than Claim 1, as of course it is a dependent claim. And yes, it may, you know, frankly, we believe that a light valve in the suspension, in a light valve suspension is more generic than an SPD because it defines a product, not the result of the use of a product. But at worst, Claim 2 could be construed to be limited to SPDs because of that language. But there's no language in Claim 1 that in any way justifies the limitation to an SPD. And specifically, electro-optical device, that is specifically generic to EPDs and SPDs. You have light modulating unit. Light modulating unit has been defined by the PTAB as including EPDs. You have a suspension. A suspension is defined in Column 1 and suspension is defined as comprised of small particles suspended in a liquid suspending medium. That is the definition of the product, the device. What the patent describes later in that section is what happens if a voltage is applied or a voltage is removed. But that is a description of the results of the use of the device, not the definition of the device. Who should, if there is mighty language in a patent, who should that be construed against, the patent owner or the accused infringer? Well, I'm not aware of this court sort of using that contract principle of contra proferentum. Well, I think it's not really that. It's more a notice function. The patent has to serve a notice function if there is language in the specification that says the term, quote, such and such means this. There is some notice function and if the patent is unclear or if it's a 50-50 case, doesn't our case law suggest that the patent owner is going to bear the burden? Your Honor, I don't think it's a question of burden because it's a question of law and there is either a right or wrong answer. In this case, and in every case, the issue is what is the invention that is described and patented? And we look upon this patent as how would a person skilled in the art understand this patent? In this case, the PTAB are not only skilled in the art, they are experts in the art and they have looked at exactly this patent the way Philips requires. They apply a broadest, you're saying the way Philips requires? Did they apply the BRI or did they apply Philips? Well, the PTAB is first required to interpret claims in a reasonable way in accordance with how a person skilled in the art would read the patent. That's a Philips standard. They apply it more broadly, but at the end, the reason for the BRC standard is that a patentee or a patent applicant has an opportunity. I understand why there's the BRC. And so if, in fact, the claims are valid in view of the prior art in Section 112 and the PTAB determines that the claims are valid, now the claim interpretation is simply reasonable. And if you have a reasonable patentable invention and it's supported by the clear statement in the summary of the invention, why is there a need to import these claim limitations? It becomes purely artificial. Okay. Any more questions? No, I just want to say something, Mr. Pasniak. For your own edification, I suggest that you read a case called Precision Specialty Metals, which I wrote at the trial level relating to the use of ellipses and the presidential opinion of this court, which affirmed that decision and did so at length. Just take a look. Yes, Your Honor, I will, but if I may, I just assure the Court that we addressed every issue just in different orders, but every issue was addressed. Thank you, Your Honor. Okay. Thank you. Thank you both. The case is taken under submission.